UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
05-CV-2626(JMR/FLN)

| | |
|---|---|
| Milavetz, Gallop & Milavetz P.A., Robert J. Milavetz, Barbara N. Nevin, John Doe, and Mary Doe<br><br>v.<br><br>United States of America | ORDER |

Plaintiffs ask the Court to declare portions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") unconstitutional. Defendant, United States of America ("the government") moves to dismiss for failure to state a claim upon which relief can be granted. Defendant's motion is denied; the debt relief agency sections of BAPCPA unconstitutionally impinge on attorneys' First Amendment rights.

I. Background

On April 20, 2005, BAPCPA was signed into law, and became effective on October 17, 2005. Among its terms, BAPCPA defines a new category of bankruptcy service provider called a "debt relief agency." 11 U.S.C. § 101 (12A)(2005). The law forbids debt relief agencies from doing certain things, and requires them to do others. This lawsuit challenges a number of these provisions.

BAPCPA bars a debt relief agency from advising a client "to incur more debt in contemplation" of a bankruptcy filing. 11 U.S.C. § 526(a)(4). BAPCPA further requires that debt relief agencies' advertisements declare: "We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy

...

Code," or a substantially similar statement.  11 U.S.C. § 528(a)(4), (b)(2).

Plaintiffs are bankruptcy attorneys, their law firm, and two unnamed members of the public.  Their attack on the statute is based on the First Amendment to the United States Constitution. They allege BAPCPA's debt relief agency provisions are unconstitutional as applied to them.  They, initially, claim BAPCPA's regulation of attorneys' advice violates the First Amendment.  Next, they claim BAPCPA's advertising requirements contravene the First Amendment.[1]  Ultimately, they contend Congress did not intend the debt relief agency requirements to apply to attorneys.  The government moves to dismiss plaintiffs' First Amendment claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  The government's motion is denied.

II. Discussion

   A. Motion to Dismiss

A Rule 12(b)(6) motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.  See Murphy v. Lancaster, 960

---

[1] In a footnote, the government asks whether plaintiffs have standing to bring these claims, since they are in no danger of immediate harm.  The government's query is misplaced; plaintiffs claim BAPCPA's debt relief agency sections both stifle and compel their speech, in violation of the U.S. Constitution.  First Amendment jurisprudence makes clear that a claim that a law has a potential chilling effect on speech establishes standing. Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 392 (1988).

F.2d 746, 748 (8th Cir. 1992). In considering such a motion, the court construes the complaint, and all of its reasonable inferences, most favorably to plaintiff. <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990).

    B.  <u>Unnamed Plaintiffs</u>

The complaint purports to set out the claims of two unnamed parties: John Doe and Mary Doe. The government denies there is any legal basis for anonymous plaintiffs in this lawsuit. Indeed, Fed. R. Civ. P. 10(a) is explicit: a complaint "shall include the names of all the parties." Notwithstanding Rule 10(a), plaintiffs claim their case falls within a limited realm of cases in which other interests – i.e., privacy and concern about embarrassment – outweigh the public's interest in open disclosure. Plaintiffs are incorrect.

There is a strong presumption against allowing parties to use a pseudonym. <u>See</u>, <u>e.g.</u>, <u>Doe v. Blue Cross & Blue Shield United of Wisconsin</u>, 112 F.3d 869, 872 (7th Cir. 1997); <u>Doe v. Frank</u>, 951 F.2d 320, 323-24 (11th Cir. 1992); <u>Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe</u>, 599 F.2d 707, 712-13 (5th Cir. 1979). The reasons are obvious and compelling: identification of litigants is recognized as important in a public proceeding. <u>See</u> <u>Blue Cross</u>, 112 F.3d at 872. A party who invokes the judicial powers of the United States invites public scrutiny. "The people have a right to know who is using their courts." <u>Id.</u>

Limited exceptions to the party-publicity rule exist. Case law has recognized three factors which, if present, might support anonymity. They have been found when "(1) plaintiffs seeking anonymity were suing to challenge governmental activity; (2) prosecution of the suit compelled plaintiffs to disclose information 'of the utmost intimacy;' and (3) plaintiffs were compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution." Doe v. Stegall, 653 F.2d 180, 185 (5th Cir. 1981) (quoting Wynne & Jaffe, 599 F.2d at 712-13). Although the listed factors are not exhaustive, they provide valuable guidance.

While the first factor is present here, the third is not. Plaintiffs argue their "wish to obtain legal advice from [plaintiff] attorneys . . . about prebankruptcy planning and filing bankruptcy" (1st Am. Compl. ¶ 10) suffices for the second factor. According to the Doe parties, the "financial situations of private citizens [are] clearly a matter of utmost intimacy, especially when they feel the need to seek advice about bankruptcy." (Pl.'s Brief 23).

Certainly, those facing bankruptcy are in financial straits; but that does not resolve the issue. Plaintiffs offer no case law to support their claim that merely seeking bankruptcy or financial advice is the kind of intimate personal information typically protected by the court. Bankruptcy is a public proceeding; the Doe

plaintiffs are disclosing no medical information or deeply personal questions surrounding human reproduction or matters of that nature.

The Court finds the bankruptcy-seeking plaintiffs' interest in their financial privacy is outweighed by the public's stronger interest in maintaining open trials.  Accordingly, the Doe plaintiffs shall amend their complaint to include their real names within 10 days of the date of this Order, or their claims will be dismissed.

    C.   <u>Constitutional Challenges</u>

        1.   <u>Attorney Advice:  Section 526(a)(4)</u>

Plaintiffs claim BAPCPA's § 526(a)(4), titled "[r]estrictions on debt relief agencies," has "a chilling effect upon lawyers," in violation of their First Amendment rights.  (1st Am. Compl. ¶ 39.)  Section 626(a)(4) states:

> A debt relief agency shall not . . . advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer fee or charge for services performed as part of preparing for or representing a debtor in a case under this title.

11 U.S.C. § 526(a)(4).

The parties disagree as to the standard of review applied to the constitutional analysis of this section.  Plaintiffs claim the standard of review for a restriction on lawful and truthful attorney advice is strict scrutiny.  The government replies that § 526(a)(4)'s restrictions are merely a species of ethical

regulation, invoking the more lenient standard outlined in <u>Gentile v. State Bar of Nev.</u>, 501 U.S. 1030 (1991). Under <u>Gentile</u>, the Court would balance the First Amendment rights of attorneys against the government's legitimate interest in regulating the activity in question, and then determine whether the regulations impose "only narrow and necessary limitations on lawyers' speech." <u>Id.</u> at 1075. The Court rejects the government's proposed standard.

The "ethical rule" of which the government speaks appears to exist only in its pleadings; the statute discloses no quasi-religious or ethical principle. The government "cannot foreclose the exercise of constitutional rights by mere labels." <u>See</u> <u>NAACP v. Button</u>, 371 U.S. 415, 429 (1963). While the section is certainly a rule, nothing in § 526 alludes to ethics. The section is titled "Restrictions on debt relief agencies," and plainly prohibits certain acts. The advice the Section forecloses may be potentially advantageous to creditors, but this does not make it equivalent to ethics either in logic or in law.

When fairly viewed, the Court finds § 526(a)(4) to be a content-based regulation of attorney speech -- it restricts attorneys from giving particular information and advice to their clients. Attorneys are forbidden to advise their clients concerning an entire subject – incurring more debt in contemplation of filing for bankruptcy. This is a plain regulation of speech.

6

Beyond this, the forbidden speech trenches on two other important areas of concern.

First, the lawyer's advice to take on certain additional financial obligations in contemplation of bankruptcy may well be in the client's best interest.[2]  A lawyer's highest duty is to the client, and the statute's forbidden advice may indeed be helpful to the client.  Secondly, this statute does not restrict false statements – arguably implicating some "ethical" precept – it forbids truthful and possibly efficacious advice.  If this is the government's view of legal ethics, it is a form of ethics unfamiliar to the Court.

As the United States Supreme Court has explained, "[g]overnment action that stifles speech on account of its message, or that requires the utterance of a particular message favored by the Government, contravenes th[e] essential [First Amendment] right[s]" of private citizens. Turner Broad. Sys. v. FCC, 512 U.S. 622, 641 (1994).  For this reason, "governmental control over the content of messages expressed by private individuals" is unconstitutional except in narrow circumstances.  Id.

---

[2]For example, it may be in the client's interest to obtain or refinance a home mortgage prior to filing bankruptcy, because one who has declared bankruptcy may well be denied a lower interest rate after the filing.  If the client gets a lower rate mortgage, the refinanced mortgage may have smaller payments which could forestall, or even prevent, the bankruptcy in the first place. Similar arguments can be made concerning automobile loans, or in cases where a client needs to co-sign undischargeable student loans.  See Hersh v. United States, 347 B.R. 19, 24 (N.D. Tex. 2006).

As the Court finds § 526(a)(4) to be a content-based restriction on protected speech, it is subject to strict scrutiny. <u>Id.</u> Such a restriction can only survive if (1) narrowly tailored to achieve (2) a compelling state interest. <u>United States v. Playboy Entm't Group, Inc.</u>, 529 U.S. 803, 813 (2000). The Court finds the government has failed to meet its burden on the first point – § 526(a)(4) is not narrowly tailored.

The government suggests § 526(a)(4) advances two compelling interests. First, it asserts an interest in protecting creditors. According to the government, § 526(a)(4)'s prohibition discourages prospective bankrupts from accumulating debt in a particular fashion, thus deterring debtors from "gaming" the means test by improperly enlarging pre-existing debt, thereby diluting the assets of the bankruptcy estate otherwise available to creditors. Second, it claims § 526(a)(4) protects debtors from attorneys who might lead them to abusive practices which could ultimately result in a denial of discharge of debts under § 523(a)(2)(c). Finally, the government argues that § 523(a)(2)(c) protects the integrity of the bankruptcy system.

Even if the Court assumes the asserted interests are compelling, the restriction is not narrowly-tailored. The government claims the section is narrowly tailored because "it does not limit more speech than is necessary to accomplish this purpose." (Def.'s Brief 25.) The government is mistaken.

Attorneys have a First Amendment right – let alone an established professional ethical duty – to advise and zealously represent their clients. <u>Legal Serv. Corp. v. Velazquez</u>, 531 U.S. 533, 548-549 (2001). Section 526(a)(4) bars an attorney from advising a client to incur any kind of debt, including legitimate debt, in contemplation of bankruptcy. The lawyer has no duty to assist creditors – who are scarcely without their own resources, and may indeed have contributed to the potential-bankrupt's straits by making credit easy to obtain. The attorney's only duty is to the client, and to the law.

Incurring debt on the eve of bankruptcy can scarcely be considered malum in se. To the contrary, for some individuals incurring further obligations, even those which must be adjusted or set aside in the bankruptcy, may be financially prudent. "For example, there may be instances where it is advisable for a client to obtain a mortgage, to refinance an existing mortgage to obtain a lower interest rate, or to buy a new car" before filing for bankruptcy. Erwin Chemerinksy, <u>Constitutional Issues Posed in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005</u>, 79 AM. BANKR. L.J. 571, 578 (2005). If a client intends to reaffirm the debt after filing bankruptcy, there is no prejudice to the bankruptcy process. BAPCPA's § 526(a)(4) limitation on speech

9

extends beyond any need to protect the bankruptcy process.[3] A lawyer who represents consumers contemplating bankruptcy bears the duty of zealous representation. Conversely, Congress does not have the power "to effect [a] serious and fundamental restriction on advocacy of attorneys." See Velazquez, 531 U.S. at 534. If upheld, this law would prevent lawyers from adequately and competently advising their clients. As such, it unconstitutionally impinges on expressions protected by the First Amendment of the Constitution.[4]

2. Advertising: Section 528(a)(4), (b)(2)

Plaintiffs challenge BAPCPA's advertising disclosure requirements, claiming § 528 violates their First Amendment rights. This section requires a denominated class, termed "debt relief agencies," to include particular, or substantially similar, language in their advertisements. Congress has prescribed that such agencies declare: "We are a debt relief agency. We help

---

[3] Even under the more lenient Gentile standard, § 526(a)(4) fails. Gentile's balancing test allows the law to impose "only narrow and necessary limitations on lawyers' speech." 501 U.S. 1030, 1075 (1991); see also Hersh, 347 B.R. at 24-25; Olsen v. Gonzales, 350 B.R. 906, 916 (D. Or. 2006); Zelotes v. Martini, 2006 WL 3231423 *4 (D. Conn. 2006).

[4] Plaintiffs further claim § 526(a)(4) is unconstitutionally vague and overbroad. The United States Supreme Court has expressed a strong preference for as-applied, as opposed to facial, challenges to the constitutionality of federal laws. Sabri v. United States, 541 U.S. 600 (2004). The Court finds this law unconstitutional as applied, and declines to expand its inquiry and consider whether it is also vague and overbroad.

people file for bankruptcy relief under the Bankruptcy Code." 11 U.S.C. § 528(a)(4), (b)(2).

Here again, the Court must determine the appropriate standard of review. The choice turns on whether the statute regulates deceptive or truthful advertising. Statutes regulating deceptive commercial speech need only withstand rational basis review. <u>Zauderer v. Office of Disciplinary Counsel of the S.Ct. of Ohio</u>, 471 U.S. 626, 651-52 (1985). But restrictions on non-deceptive advertising must employ means that directly advance a substantial government interest. <u>Cent. Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York</u>, 447 U.S. 557, 566 (1980).

The government argues that BAPCPA regulates deceptive advertising, citing evidence adduced before Congress showing "some bankruptcy lawyers did not mention in their advertisements that their ability to make 'debts disappear' derived from the use of the bankruptcy process." (Def.'s Brief 28.) Plaintiffs respond that, when Congress imposed these requirements on all advertisements of bankruptcy assistance, it mandated a blunderbuss which strikes truthful, as well as false or deceptive advertising. The Court agrees.

With very few exceptions, any party advertising debt relief services must include § 528's statutory statement. The present lawyer-plaintiffs advertise themselves as bankruptcy attorneys in newspapers, telephone directories, television, radio, and the internet. There is no evidence, however, suggesting their

11

bankruptcy assistance advertisements are deceptive in any regard. Even assuming some debt relief agencies advertise an ability to make "debts disappear," there is no showing such a statement is deceptive. Under these circumstances, the Court finds it appropriate to analyze this question by applying intermediate scrutiny. See Zauderer, 471 U.S. at 641.

The government may only regulate truthful bankruptcy assistance advertisements if: (1) the regulation directly advances (2) a substantial government interest, and is (3) "narrowly drawn." Cent. Hudson, 447 U.S. at 566; Zauderer, 471 U.S. at 641. The Court finds that BAPCPA's § 528 advertising requirements fail to directly advance the government's purported substantial interest and are not narrowly drawn.

The government contends advertising, absent the compulsory statements, may mislead the lay community into thinking debts can be erased without payment or filing for bankruptcy. The government claims §§ 528(a)(4) and (b)(2) protect against consumer deception "by alerting [them] that a lawyer may use bankruptcy as a means to help them." (Def.'s Brief 28.) Setting aside the implausibility of anyone actually believing in a magic wand capable of making debt go away, it is most unlikely that the insertion of the statement "We are a debt relief agency, we help people file for bankruptcy relief under the Bankruptcy Code" prevents consumer deception; it may well increase it.

The term "debt relief agency" is simply a legislative contrivance. The public is more likely to be confused by an advertisement containing this Congressionally-invented term than one which advertises the services of a bankruptcy attorney.

Beyond this, however, the term "debt relief agency" is almost all-encompassing. It instantly swallows all persons who engage in "bankruptcy assistance," attorneys and non-attorneys alike. Congress's merger of both attorneys and non-attorneys is, itself, likely to confuse the public. There are many non-trivial differences between an attorney's services to his or her clients, and services non-lawyers are permitted to offer. Unlike those who only restructure debt, or perhaps provide bankruptcy forms, attorneys give legal advice and actually represent debtors in bankruptcy proceedings. The requirement that parties so dissimilarly-placed must use the same mandated disclosure statement is likely to cause consumer confusion. In this respect, § 528 fails to directly advance the government's stated interest in clarifying bankruptcy service advertisements.[5]

---

[5]At oral argument, the government's counsel acknowledged areas where the statute is vague. As an example, it appears that the quantum of bankruptcy advice a lawyer offers may require some attorneys to publish the mandated language and others not. The statute makes no distinction between a lawyer who only occasionally has a client facing bankruptcy and those who do so regularly. Quaere: does a 500-person law firm having a single lawyer who regularly does bankruptcy work have to put the disclaimer on every piece of the firm's advertising?

Section 528's advertising requirement is also not narrowly drawn. The narrowly drawn standard is "something short of a least-restrictive means standard." Bd. of Tr. of the State Univ. of New York v. Fox, 492 U.S. 469, 477 (1989). A narrowly drawn regulation designed to prevent deception "may be no broader than reasonably necessary to prevent the 'perceived evil.'" In re R.M.J., 455 U.S. 191, 203 (1992). Section 528's language not only regulates misleading advertisements – those suggesting debts can disappear – it binds all who advertise bankruptcy services. This sweeping regulation goes beyond whatever problem it was designed to address. It broadly regulates absolutely truthful advertisements throughout an entire field of legal practice. The government has failed to show that this restriction on attorneys' commercial speech is justified. As applied to attorneys, this section of BAPCPA fails constitutional scrutiny. Thus, the government cannot prevail on its motion to dismiss.

    D.   The "Debt Relief Agency" Definition

Plaintiffs ask the Court to find attorneys beyond the scope of a BAPCPA "debt relief agency." According to the statute,

> [t]he term 'debt relief agency' means any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110.

11 U.S.C. § 101 (12A). This section, of course, makes no direct reference to either "attorney" or "lawyer." It does include the term "bankruptcy petition preparer," which, by definition,

14

expressly excludes attorneys and their staff. See 11 U.S.C. § 110(a)(1)(2006). According to plaintiffs, the omission of any reference to attorneys or lawyers, while including a term which excludes attorneys, shows Congress must have intended to exclude attorneys from the "debt relief agency" definition. They also claim it would be absurd for attorneys to provide a statement telling their clients they have a right to an attorney, and that only attorneys can provide legal advice as required for debt relief agencies under 11 U.S.C. § 527(b).[6]

The government claims the statute includes attorneys because legal representation is included in "bankruptcy assistance," statutorily defined as:

> any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title.

11 U.S.C. § 101 (4A).

At first glance, this language might include attorneys. But the glance is deceiving: the statute contains a rule of construction for the term "debt relief agency." The statute provides that nothing in §§ 526, 527, and 528 – those sections imposing requirements on debt relief agencies – shall:

---

[6] At least one court has found these arguments persuasive, holding that debtor attorneys are not "debt relief agencies." In re Attorneys at Law and Debt Relief Agencies, 332 B.R. 66, 69 (Bankr. S.D. Ga. 2005).

15

>     be deemed to limit or curtail the authority or
>     ability . . . of a State or subdivision or
>     instrumentality thereof, to determine and enforce
>     qualifications for the practice of law under the laws of
>     that State.

11 U.S.C. § 526(d)(2)(A).

If lawyers are placed within the ambit of § 101 (4A), the placement conflicts with § 526(d)(2)(A). The conflict would exist because states would be deprived of their ability "to determine and enforce qualifications for the practice of law." If BAPCPA's debt relief agency sections apply to attorneys, it means Congress has taken upon itself the authority to determine the advice attorneys can give their clients and what attorney advertisements must say, thereby infringing on the state's traditional role of regulating attorneys. See Leis v. Flynt, 439 U.S. 438, 442 (1979) ("Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States.")

This view is supported by the doctrine of constitutional avoidance. This doctrine counsels that, in construing a statute for ambiguity, the Court must opt for a construction which avoids grave constitutional questions. Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988). The Court perceives a clear ambiguity in this statute – on one hand it appears to regulate a lawyer's practice; on the other, such regulation is specifically reserved to the states. As outlined above, these sections would be unconstitutional if applied

to attorneys. For these reasons, the Court finds §§ 526, 527 and 528 do not apply to attorneys.

VI. Conclusion

The Court finds BAPCPA sections 526(a)(4) and 528(a)(4), (b)(2) are unconstitutional as applied to attorneys. Moreover, the Court finds the debt relief agency provisions of BAPCPA inapplicable to attorneys. Therefore, the government's motion to dismiss [Docket No. 13] is denied.

IT IS SO ORDERED.

Dated:  December 7th, 2006

s/ James M. Rosenbaum
JAMES M. ROSENBAUM
United States Chief District Judge